IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLARE DUCKWORTH,<br><br>          Plaintiff,<br><br>     v.<br><br>LIEUTENANT STEPHEN BIELLO, et al.,<br><br>          Defendants. | CIVIL ACTION<br>NO. 13-7143 |

**OPINION**

**Slomsky, J.**                                                                                                               **April 9, 2014**

### I.     INTRODUCTION

Clare Duckworth ("Plaintiff") brings this suit against Lieutenant Stephen Biello ("Lt. Biello"), Captain John Darby ("Capt. Darby") and the City of Philadelphia ("Defendants") for alleged violations of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA").[1]  In Count I of her Complaint, Plaintiff alleges that Defendants discriminated against her based on sex, created a hostile work environment, and retaliated against her in violation of Title VII.  In Count II of her Complaint, Plaintiff asserts a failure to accommodate claim against Defendants under the ADA.  In Count III of her Complaint, Plaintiff alleges that Defendants discriminated against her based on sex, created a hostile work environment, retaliated against her, and denied her a reasonable accommodation in violation of the PHRA.

---

[1] Title VII is codified at 42 U.S.C. § 2000e, et seq.  The ADA is codified at 42 U.S.C. § 12101, et seq., and the PHRA can be found at 43 Pa. Stat. Ann. §§ 951-963.

Defendants filed a Partial Motion to Dismiss, seeking dismissal of Count I in its entirety. They also seek to dismiss the disparate treatment,[2] hostile work environment, and retaliation claims in Count III. However, they do not seek to dismiss Count II of the Complaint, and they do not seek to dismiss the failure to accommodate claim found in Count III. A hearing on the Motion was held on April 7, 2014. The Motion is now ripe for disposition.[3]

**II.    BACKGROUND**

The following facts are taken from the Amended Complaint and must be accepted as true for purposes of the Motion to Dismiss. Plaintiff has been a Philadelphia Police Officer since August 1989. (Doc. No. 1 at ¶ 11.) On December 22, 2002, she was assigned to the Child Abuse division of the Special Victims Unit. (Id.) Plaintiff's shifts alternated weekly, from 8 a.m. to 4 p.m. and 2 p.m. to 10 p.m., with weekends off. (Id.) Plaintiff has been diagnosed with Crohn's Disease[4] and Fibromyalgia. (Id. at ¶¶ 12-13.) Plaintiff's supervisors, Lt. Biello and Capt. Darby, knew that Plaintiff suffered from both afflictions. (Id. at ¶¶ 14, 16-17.)

In November 2011, Plaintiff began having fibromyalgia flare-ups. (Id. at ¶ 18.) The fibromyalgia caused pain throughout Plaintiff's body and severely reduced her mobility. (Id.) Her symptoms were worse in the morning, and her mobility would improve throughout the course of the day. (Id.) Due to these fibromyalgia flare-ups, Plaintiff took two days off in November 2011 and twelve days off in December 2011. (Id. at ¶ 19.)

---

[2] At the hearing on the Motion to Dismiss held on April 7, 2014, Defendants withdrew their Motion with respect to Plaintiff's disparate treatment claims under Title VII and the PHRA. Therefore, the Court will not address Defendants' arguments regarding disparate treatment.

[3] In reaching its decision, the Court has considered the following: the Complaint (Doc. No. 1), Defendants' Motion to Dismiss (Doc. No. 4), Plaintiff's Response in Opposition (Doc. No. 6) with accompanying exhibits, and the arguments made by counsel for the parties at a hearing on the Motion held on April 7, 2014.

[4] The Complaint states that Plaintiff suffers from "Chromes Disease," but this is appears to be a typographical error.

On January 17, 2012, Plaintiff was out sick due to fibromyalgia pain, and Lt. Biello called her because she had missed a meeting. (Id. at ¶ 20.) Lt. Biello informed Plaintiff that Capt. Darby wanted to transfer her because of the sick time she was using. (Id.) On January 24, 2012, Plaintiff had a meeting with Lt. Biello and explained that she was using sick time because of her fibromyalgia. (Id. at ¶ 21.) Then, on January 30, 2012, Plaintiff sent a text message to Lt. Biello, asking if she could work an extra week on the 2 p.m. to 10 p.m. shift because she was experiencing excruciating pain in the mornings due to her fibromyalgia. (Id. at ¶ 22.) Lt. Biello responded via text message: "we are not doing that." (Id.)

From 2012 to the present, Plaintiff has continued to suffer from fibromyalgia flare-ups. (Id. at ¶ 23.) Despite being in constant pain, Plaintiff continued coming to work. (Id.) According to Plaintiff, she performed her employment duties satisfactorily during this time. (Id.) On April 16, 2012, Plaintiff met with Capt. Darby and Lt. Biello to ask them if she could work the 2 p.m. to 10 p.m. shift on a temporary basis while she recovered from the fibromyalgia flare-ups. (Id. at ¶ 24.) Plaintiff's request was denied. (Id.) Capt. Darby told Plaintiff that she should take leave under the Family and Medical Leave Act ("FMLA")[5] to recover, but he would not change her schedule to the 2 p.m. to 10 p.m. shift. (Id.) Plaintiff was not satisfied with the proposed solution because she wanted to continue working full time but with an accommodation. (Id.)

On April 19, 2012, Plaintiff had another meeting with Capt. Darby where she again asked to work a later shift. (Id. at ¶ 25.) Capt. Darby denied Plaintiff's request a second time and told her that her only option was to take FMLA leave. (Id.) Plaintiff reported to work the next day, and Capt. Darby was furious that she had come in because he had already arranged for another

---

[5] The FMLA is codified at 29 U.S.C. § 2601, et seq.

3

officer to replace her.  (Id. at ¶ 26.)  He was under the impression that Plaintiff would be out on FMLA leave.  (Id.)  At that time, Capt. Darby gave Plaintiff verbal notice that she was delinquent for unwritten reports.  (Id.)

From April 2012 until October 2012, Plaintiff used approximately 250 hours of sick and vacation time when her fibromyalgia pain was extreme.  (Id. at ¶ 29.)  Based on her treatment by her supervisors, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on May 27, 2012.  (Id. at ¶ 30.)  Plaintiff filed a second complaint with the EEOC on August 7, 2012.  (Id.)

In October 2012, at the recommendation of her doctor, Plaintiff took sick leave on a continued basis for approximately seven weeks.  (Id. at ¶ 31.)  According to Plaintiff, until this time, she was able to perform the essential functions of a police officer in the Special Victims Unit.  (Id.)  On November 23, 2012, Capt. Darby had a meeting with Lt. Biello and Lt. Smith.[6]  He informed the two lieutenants that he reassigned Plaintiff to line-squad (7x3 / 8x4 and alternating every two weeks of night work 3x11 / 4x12, and rotating days off).[7]  (Id. at ¶ 32.)  The three supervisors also discussed Plaintiff's EEOC charges and the different treatment towards her and other officers.  (Id.)  According to Plaintiff, Capt. Darby decided to switch Plaintiff back to Child Abuse so that it would not "look like retaliation."  (Id.)

On November 28, 2012, Plaintiff returned from sick leave to full duty status.  (Id. at ¶ 33.)  Upon her return to work, Plaintiff was moved to another floor in Child Abuse and was not assigned any new cases for six weeks.  (Id.)  From January 2013 to the present, Plaintiff has

---

[6] Plaintiff does not provide Lt. Smith's first name.  The Complaint only states that Lt. Smith is the administrative lieutenant for the Special Victims Unit.  (Doc. No. 1 at ¶ 32.)

[7] The Complaint does not provide any more detail as to what a line-squad is or whether these were day or night shifts.

continued to work in Child Abuse on alternating 8 a.m. to 4 p.m. and 2 p.m. to 10 p.m. work shifts.  (Id. at ¶ 34.)  She continues to experience extreme pain in the mornings and regularly visits a rheumatologist.  (Id.)

### III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, n.27 (3d Cir. 2010)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint

and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV.   ANALYSIS

In their Motion to Dismiss, Defendants initially sought to dismiss Count I in its entirety and also the parallel claims for disparate treatment, hostile work environment, and retaliation in Count III. However, as noted previously, at the hearing held on April 7, 2014, Defendants withdrew their Motion with respect to Plaintiff's disparate treatment claims under Title VII and the PHRA. Therefore, the Court need not discuss Defendants' arguments pertaining to those claims. Defendants also do not seek to dismiss Count II of the Complaint, and they do not seek dismissal of the failure to accommodate claim found in Count III.

Defendants set forth two general arguments as to why the contested claims should be dismissed. They first contend that Plaintiff has failed to exhaust her administrative remedies before initiating this suit. Specifically, they argue that Plaintiff has not exhausted her retaliation and hostile work environment claims because she failed to include them in her charges with the EEOC. Defendants further contend that even if these claims are considered exhausted, Plaintiff has failed to sufficiently plead the claims for a hostile work environment and retaliation. The Court will discuss each argument seriatim.

6

### 1. Plaintiff Has Exhausted Her Administrative Remedies

In their Motion to Dismiss, Defendants first argue that Plaintiff has failed to exhaust her administrative remedies with respect to her retaliation and hostile work environment claims. Both parties agree that before bringing suit for judicial relief, a plaintiff must exhaust administrative remedies by first filing a charge with the EEOC. Plaintiff concedes that she never presented her retaliation and hostile work environment claims to the EEOC. (Doc. No. 6 at 5.)

While a complainant like Plaintiff may not bypass the administrative process, the Third Circuit has held that "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the Commission." Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d Cir. 1984) (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)). When faced with a Complaint containing claims that were not presented to the EEOC, "a district court may assume jurisdiction over additional charges if they are reasonably within the scope of the claimants [sic] original charges and if a reasonable investigation by the EEOC would have encompassed the new claims." Id. See also Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984). Unlike other Courts of Appeals, "[t]he Third Circuit has rejected a per se rule that all claims of retaliation are ancillary to the filing of an EEOC complaint . . . ." Pourkay v. City of Philadelphia, No. 06-5539, 2009 WL 1795814, *6 (E.D. Pa. June 23, 2009) (citing Robinson v. Dalton, 107 F.3d 1018, 1024 (3d Cir. 1997)). See also Waiters, 729 F.2d at 237 n.10. Therefore, determining whether Plaintiff's new claims are exhausted is a fact specific inquiry that requires the Court to "examine carefully the prior pending EEOC complaint and the unexhausted claim

on a case-by-case basis before determining that a second complaint need not have been filed." Robinson, 107 F.3d at 1024.

Defendants rely on Antol v. Perry, 82 F.3d 1291 (3d Cir. 1996) in support of their argument that Plaintiff failed to properly exhaust her retaliation and hostile work environment claims. (Doc. No. 4 at 8.) In Antol, the Third Circuit Court of Appeals held that the plaintiff failed to exhaust his administrative remedies with respect to his gender discrimination claim because his EEOC charge focused only on disability discrimination. 82 F.3d at 1295-96. Because the core grievances in the plaintiff's federal suit were not the same as those contained in his earlier EEOC charge, the Court held that the plaintiff failed to exhaust his administrative remedies for his gender discrimination claim. Id. at 1296.

In this case, Plaintiff filed two charges with the EEOC. The first was filed on May 27, 2012, and the second was filed on August 7, 2012. (Doc. No. 1 at ¶ 30.) Both EEOC charges include Plaintiff's claims of disability and sex discrimination. (See Doc. No. 6-1, Exs. A-B.) In support of those claims, Plaintiff alleged that on three separate occasions, her requests for an accommodation were denied. (Id.) Moreover, as Plaintiff concedes, the EEOC charges do not use the descriptive language "retaliation" or "hostile work environment harassment" in naming the claims for which she sought relief.[8]

---

[8] On both EEOC forms, there is a section which asks the complainant to select the basis for the defendants' alleged discrimination. A complainant may select discrimination based on any one of the following: Race; Color; Sex; Religion; National Origin; Retaliation; Age; Disability; Genetic Information; or Other. (See Doc. No. 6-1, Exs. A-B.) When Plaintiff submitted her EEOC charges, she only checked the boxes next to Sex and Disability. She did not select the box for Retaliation. In addition, she did not select the box labelled "Other," and did not specify a claim for relief based on hostile work environment harassment. However, Plaintiff alleges in her Complaint that she has been subjected to a hostile work environment due to her protected class as a female, and she did select discrimination based on sex on both EEOC forms.

These claims appeared in Plaintiff's federal lawsuit for the first time.  In the Complaint, Plaintiff alleges that Defendants retaliated against her in the following ways: 1) On or about November 13, 2012, Capt. Darby reassigned Plaintiff to line-squad; and 2) Defendants continue to deny Plaintiff's accommodation request to be switched to a later shift within the Child Abuse unit in which she currently works.  (Doc. No. 1 at ¶¶ 40, 55.)  Furthermore, Plaintiff contends that Defendants' continuous denial of her requests for a reasonable accommodation constitutes ongoing harassment.  (Id. at ¶¶ 42-43, 57-58.)

The Court may assume jurisdiction over the additional charges of retaliation and harassment because they are reasonably within the scope of Plaintiff's EEOC charges.  See Howze, 750 F.2d at 1212.  First, these new acts of alleged discrimination—retaliation and harassment—occurred while Plaintiff's original claims were pending before the EEOC.  Thus, these claims could reasonably be expected to grow out of her original charges of discrimination with the EEOC.  This is especially true of the retaliation claim, as Plaintiff alleges that Defendants retaliated against her after she filed her two EEOC charges.  Second, the facts that Plaintiff uses to support her instant claims of retaliation and harassment are the same facts she alleged in her EEOC charges.  In her EEOC charges, Plaintiff alleged that Defendants' denials of her requests for an accommodation constituted discrimination based on her disability and her sex.  (See Doc. No. 6-1, Exs. A-B.)  Likewise, in her federal Complaint, Plaintiff alleges that Defendants retaliated against Plaintiff for filing the EEOC charges by continuing to deny her requests for an accommodation, and this continuous denial has created a hostile work environment.  Unlike the situation in Antol, the core grievance in the federal suit is the same as the core grievance found in Plaintiff's earlier EEOC charges: Defendants' continuous denial of her requests for an accommodation.  Because Plaintiff's retaliation and harassment claims fall

reasonably within the scope of her EEOC complaints, the Court is satisfied that Plaintiff has sufficiently exhausted her administrative remedies with respect to these two claims.

### 2. Plaintiff Sufficiently Alleges A Claim For Hostile Work Environment But Fails To Allege A Plausible Retaliation Claim

In their Motion to Dismiss, Defendants argue that even if Plaintiff's claims for harassment and retaliation are considered exhausted, the claims should nonetheless be dismissed because Plaintiff has failed to allege facts which plausibly give rise to claims for hostile work environment harassment or retaliation. Plaintiff brings these claims under Title VII in Count I and under the PHRA in Count III. As previously mentioned, Defendants are not seeking to dismiss Plaintiff's disparate treatment or failure to accommodate claims.

#### a. Plaintiff Alleges A Plausible Hostile Work Environment Claim

To successfully assert a hostile work environment claim under Title VII, Plaintiff must demonstrate that: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected Plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) a basis for employer liability exists. Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990).

In their Motion to Dismiss, Defendants focus on the second prong of Plaintiff's prima facie case and argue that she failed to plead facts which demonstrate that the alleged harassment was severe or pervasive. In determining whether harassment is sufficiently severe or pervasive, the Court should consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., 510 U.S. 17, 23 (U.S. 1993). Any other relevant factors, like the employee's psychological

well-being, may be taken into account, and no single factor is required. Id. According to Plaintiff, "Defendants' treatment was severe and pervasive, as the denied accommodation has been continuous for almost two years and continues to the present." (Doc. No. 1 at ¶ 42.)

Defendants contend that the Complaint lacks facts which demonstrate that Plaintiff was subjected to severe or pervasive harassment because Plaintiff has not alleged that Defendants subjected her to a physically intimidating or humiliating atmosphere. (Doc. No. 4 at 11.) They further argue that she failed to demonstrate that Defendants' denial of her accommodation requests interfered with her work performance. (Id. at 11-12.) In support of their argument, Defendants point to the Complaint, in which Plaintiff explains that during the period of harassment, "she performed her employment duties satisfactorily." (Doc. No. 1 at ¶ 23.)

Accepting this fact as true for purposes of the Motion to Dismiss, Plaintiff's continued satisfactory job performance tends to undercut her allegation that the harassment was severe or pervasive enough to constitute a hostile work environment. However, in response to Plaintiff's charge with the EEOC, Defendants submitted a letter to the EEOC, explaining how Plaintiff's work performance had deteriorated during the relevant time period.[9] For example, Defendants stated: "[Plaintiff's] work quality also decreased markedly. [Plaintiff] often failed to submit reports on time, and was easily distracted while at work;" "[Plaintiff's] work quality and reliability continued to decline;" "From April 2012 on, [Plaintiff's] condition and work quality worsened;" "Ultimately, [Plaintiff] was still unable to adequately perform her job duties. On

---

[9] While this letter is not attached to the Complaint, the Court may rely on it in deciding Defendants' Motion to Dismiss. In addition to considering the Complaint, the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). This letter was signed and submitted by the City's Law Department, and there can be no dispute as to its authenticity. Therefore, the Court may consider the contents of this letter in rendering its decision.

October 8, 2012, as her condition and work quality continued to slide, [Plaintiff] voluntarily chose to take an unpaid leave of absence." (Doc. No. 6-1, Ex. C at 1, 2, 3.)

On the face of the Complaint, it is unclear whether Plaintiff's poor work performance was a result of her ongoing medical condition(s), Defendants' repeated denials of her requests for an accommodation, or some combination of the two. However, the Court must construe the facts in a light most favorable to Plaintiff, and at this stage of the litigation, these facts plausibly demonstrate that Plaintiff was subjected to severe or pervasive harassment that affected her ability to work. Thus, Plaintiff's hostile work environment claim will not be dismissed.

### b. Plaintiff Fails To Allege A Plausible Retaliation Claim

To plausibly allege a prima facie retaliation claim, Plaintiff must plead, inter alia, that her engagement in protected activity was the "but-for" cause of the alleged adverse employment action by the employer. Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2534 (2013). Under this standard, it is not enough for Plaintiff to plead that her engagement in protected activity was simply a "motivating factor" in the Defendants' decision to take adverse employment action against her. Id.

Here, Plaintiff engaged in protected activity when she filed two complaints with the EEOC. To plausibly state a retaliation claim, Plaintiff must allege that "but for" her filing these two charges, Defendants would not have taken the following alleged adverse employment actions against her: 1) Capt. Darby reassigned Plaintiff to line-squad; and 2) Defendants continued to deny Plaintiff's request for an accommodation.[10] (Doc. No. 1 at ¶¶ 40, 55.)  In the

---

[10] In the Complaint, Plaintiff identifies three discreet requests for an accommodation.  Plaintiff made those requests on January 30, 2012; April 16, 2012; and April 19, 2012. (Doc. No. 1 at ¶¶ 22, 24-25.)  All three requests were denied before Plaintiff filed any charges with the EEOC.  Aside from failing to adequately plead that her engagement in protected activity was the "but for" cause for Defendants' alleged retaliation, Plaintiff fails to allege any facts that Defendants

Complaint, Plaintiff alleges that "[t]he substantial and/or motivating reason for the above mentioned adverse actions was the Plaintiff's sex and/or opposition to perceived violations of Title VII and the ADA." (Id. at ¶¶ 41, 56.)

Plaintiff has failed to allege that the filing of the EEOC charges was the "but for" cause of Defendants' alleged retaliation. Instead, she asserts that her opposition to Defendants' treatment was merely a "substantial" or "motivating" factor behind their decision to retaliate. Moreover, Plaintiff also alleges that Defendants took adverse actions against her because of her sex, rather than solely because she filed charges with the EEOC. Accepting these facts as true for purposes of the Motion to Dismiss, Plaintiff has not alleged a plausible claim for retaliation. In this regard, the Court will grant Plaintiff leave to amend the Complaint if, after a full review of this Opinion, she determines that she can present facts which would support a plausible claim of retaliation.

## V.    CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss will be granted in part and denied in part. Plaintiff has sufficiently exhausted her administration remedies with regard to her claims for retaliation and harassment. Plaintiff's harassment claim is also sufficiently pled. While Plaintiff has failed to sufficiently plead a retaliation claim, the Court will grant Plaintiff leave to amend her Complaint.

---

denied any additional request for an accommodation after she filed charges with the EEOC.